# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

04 - 20 11 CR-JORDAN  MAGISTRATE JUDGE
BROWN

CASE NO._____

18 U.S.C. § 371
18 U.S.C. § 1343
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1956(h)
21 U.S.C. §§ 353(c)(3)(A)(i) and (ii)(II)
21 U.S.C. § 331(t)
21 U.S.C. § 333(a)(2)
18 U.S.C. § 2
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

CHARLES WILLIAMS,
a/k/a "Rocha Nefwani,"
MARK LIDEN,
WILLIAM WALKER,
a/k/a "Per O. Loyning,"
and
SHELDON KRESLER,



Defendants.

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.     African Christian Relief, Inc. ("ACR") was a non-profit charitable organization, within the meaning of Title 26, United States Code, Section 501(c)(3), which was founded in 1992 with its principal office in Tucson, Arizona.  ACR was a charity supplying donated goods and medical supplies to needy people in Africa.



2.     Defendant **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** was employed at ACR from in or around 1993 through 2001. **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** became the Executive Director of ACR in or around June 1995.

3.     Schein Pharmaceutical, Inc. ("Schein") was a pharmaceutical drug manufacturer primarily located in Florham Park, New Jersey. Among the pharmaceutical drugs manufactured by Schein were Infed, Verapamil, Carisprodol and Orphenadrine Citrate.

4.     Beginning in or around October 1996, Schein instituted a humanitarian aid division within the company dedicated to serving organizations performing humanitarian aid services by supplying medicines at discounted prices for use in humanitarian aid projects.

5.     Infed, Verapamil, Carisprodol and Orphenadrine Citrate are prescription drugs within the meaning of Title 21, United States Code, Section 353(b)(1), in that they are drugs intended for use by man, which drugs are limited by an approved application under Title 21, United States Code, Section 355 for use under the professional supervision of a practitioner licensed by law to administer such drugs.

6.     Marisa Trading, Inc. ("Marisa Trading") was a company operated by defendant **MARK LIDEN, which was not registered in the State** of Florida. Marisa Trading had its primary place of business in Winter Haven, Florida.

7.     Crystal Coast, Inc. ("Crystal Coast") was a pharmaceutical drug wholesaler and broker located in Miami, Florida. Crystal Coast received its license to conduct business as a pharmaceutical wholesaler in February 2000. Crystal Coast did not have a pharmaceutical wholesaler's license prior to February 2000.

8.     Defendants **WILLIAM WALKER, a/k/a "Per O. Loyning,"** and **SHELDON KRESLER** founded and shared ownership of Crystal Coast. **SHELDON KRESLER** was the President of Crystal Coast and **WILLIAM WALKER, a/k/a "Per O. Loyning,"** was the Vice-President.

## COUNT 1

### Conspiracy to Commit Wire Fraud and Prescription Drug Diversion
### (18 U.S.C. § 371)

1.    The allegations of paragraphs 1 through 8 of the General Allegations Section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    From in or around October 1999, and continuing through in or around June 2000, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**CHARLES WILLIAMS,**
**a/k/a "Rocha Nefwani,"**
**MARK LIDEN,**
**WILLIAM WALKER,**
**a/k/a "Per O. Loyning,"**
**and**
**SHELDON KRESLER,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

a.    wire fraud, in violation of Title 18, United States Code, Section 1343; and

b.    prescription drug diversion, in violation of Title 21, United States Code, Sections 331(t), 333(a)(2), and 353(c)(3)(A)(i) and (ii)(II).

### PURPOSE OF THE CONSPIRACY

3.    It was the purpose of the conspiracy for the defendants, through ACR, to unjustly enrich themselves by defrauding Schein out of hundreds of thousands of dollars through the purchase of prescription drugs at steeply discounted prices based on the materially false representations that the drugs would be used for humanitarian relief overseas when, in truth and in fact, the defendants intended to sell the prescription drugs in the domestic market for a profit.

3

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants sought to accomplish the purpose and objects of the conspiracy included, among others, the following:

4.     **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** falsely represented to Schein that ACR was interested in purchasing prescription drugs for the purpose of humanitarian relief abroad, when, in truth and in fact, the defendants were not going to use the drugs for humanitarian relief but instead intended to resell the discounted drugs in the domestic market for a profit.

5.     Based on the false representations that **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** made to Schein, the defendants purchased the prescription drugs from Schein at a fraction of the normal wholesale price.

6.     Having secured an agreement from Schein to purchase the prescription drugs at a discounted price for humanitarian relief overseas, the defendants sold the drugs to domestic pharmaceutical wholesalers at a profit. The defendants received cash and checks from the domestic wholesalers as payment for the prescription drugs that the defendants purchased from Schein.

7.     The defendants hired two Florida attorneys to act as escrow agents to receive the cash from the domestic pharmaceutical wholesalers and to submit payments to Schein for the prescription drugs they purchased, thereby concealing that the sources of the money were domestic pharmaceutical wholesalers who prepaid the defendants for their prescription drug orders.

8.     Once Schein received payment from the escrow attorneys, the defendants caused Schein to ship the prescription drugs to a freight forwarding company in Miami, Florida, in order to store the drugs and make it appear as if the drugs were going to be shipped abroad for humanitarian relief purposes.

9.     After Schein shipped the prescription drugs to the Miami freight forwarding company, the defendants took possession of the prescription drug shipments, diverted and sold them to domestic pharmaceutical wholesalers.

4

10.     The defendants authorized some of the domestic pharmaceutical wholesalers to pick up the prescription drugs from the Miami freight forwarding company and the defendants delivered the drugs to other domestic wholesalers.

11.     After each of the transactions, the defendants shared the profits and received the proceeds of the fraud through wire transfers from their escrow attorneys' trust accounts and through checks issued by the domestic wholesalers who purchased the diverted prescription drugs.

### OVERT ACTS

In furtherance of the conspiracy and to achieve the purpose and objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1.     In or around October 1999, **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** who identified himself as an officer of the charity ACR, spoke with an employee at Schein and asked for Schein to sell prescription drugs to ACR for the purpose of humanitarian relief to Angola.

2.     In or around December 1999, **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** spoke with a Schein employee and asked her to sell prescription drugs to ACR for the purpose of humanitarian relief to Peru.

### Order No. 1 – Angola

3.     On or about November 15, 1999, defendant **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** placed an order with Schein for a shipment of Infed priced at $8,800.

4.     In or around November 1999, **MARK LIDEN, WILLIAM WALKER, a/k/a "Per O. Loyning,"** and **SHELDON KRESLER** met with a Miami attorney who agreed to serve as escrow agent for a number of transactions involving prescription drugs that were supposed to be shipped to Angola.

5.     In or around November 1999, **WILLIAM WALKER, a/k/a "Per O. Loyning,"** and **SHELDON KRESLER** entered into an agreement with a domestic pharmaceutical wholesaler to

sell to this wholesaler the shipment of Infed that **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** ordered from Schein on or about November 15, 1999.

6.    On or about November 16, 1999, the defendants caused a Miami attorney to wire transfer $8,800 to Schein for the purchase of the Infed which was to be shipped to a Miami freight forwarding company.

7.    On or about November 22, 1999, **MARK LIDEN** authorized the Miami freight forwarding company to release the Infed shipment to a representative of the domestic pharmaceutical wholesaler who agreed to purchase the Infed shipment from **WILLIAM WALKER, a/k/a "Per O. Loyning,"** and **SHELDON KRESLER**.

8.    On or about November 22, 1999, **WILLIAM WALKER, a/k/a "Per O. Loyning,"** turned over possession of the Infed shipment to the domestic pharmaceutical wholesaler who agreed to purchase the Infed for $15,000.

### Orders No. 2 & 3 – Angola

9.    On or about November 23, 1999, **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** placed two orders with Schein for two Infed shipments priced at $79,200 and $44,000, respectively.

10.    In or around November 1999, **WILLIAM WALKER, a/k/a "Per O. Loyning,",** and **SHELDON KRESLER** entered into an agreement with two domestic pharmaceutical wholesalers to sell the two shipments of Infed that **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** ordered from Schein on or about November 23, 1999.

11.    On or about November 23, 1999, the defendants caused a Miami attorney to wire transfer $123,200 to Schein for the purchase of the Infed which was to be shipped to a Miami freight forwarding company.

12.    In or around December 1999, **MARK LIDEN** authorized the Miami freight forwarding company to release the Infed shipments to a representative of the domestic pharmaceutical

6

wholesalers who agreed to purchase the shipments from **WILLIAM WALKER, a/k/a "Per O. Loyning,"** and **SHELDON KRESLER**.

13.    In or around December 1999, **WILLIAM WALKER, a/k/a "Per O. Loyning,"** turned over possession of the Infed shipments to the domestic pharmaceutical wholesalers who agreed to purchase the Infed for $150,000.

### Order No. 4 – Angola

14.    On or about December 6, 1999, **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** placed an order with Schein for a shipment of Infed priced at $414,656.

15.    In or around December 1999, **WILLIAM WALKER, a/k/a "Per O. Loyning,"**, and **SHELDON KRESLER** entered into an agreement with three domestic pharmaceutical wholesalers to sell the shipment of Infed that **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** ordered from Schein on or about December 6, 1999.

16.    On or about December 7, 1999, the defendants caused a Miami attorney to wire transfer $414,656 to Schein for the purchase of the Infed which was to be shipped to a Miami freight forwarding company.

17.    **In or around December 1999, MARK LIDEN** gave authorization to the Miami freight forwarding company to release the Infed shipments to representatives of the domestic pharmaceutical wholesalers who agreed to purchase the Infed shipment from **WILLIAM WALKER, a/k/a "Per O. Loyning,"** and **SHELDON KRESLER**.

18.    In or around December 1999, **WILLIAM WALKER, a/k/a "Per O. Loyning,"** and **SHELDON KRESLER** turned over possession of the Infed shipment to the domestic pharmaceutical wholesalers who agreed to purchase the Infed for $756,800.

**Order No. 1 – Peru**

19.     On or about December 10, 1999, **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** placed an order with Schein for a shipment of various prescription drugs, including Verapamil and Orphenadrine Citrate, priced at $75,266.

20.     In or around December 1999, **MARK LIDEN** entered into an agreement with a domestic pharmaceutical wholesaler to sell the shipment of prescription drugs that **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** ordered from Schein on or about December 10, 1999.

21.     On or about December 14, 1999, **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** and **MARK LIDEN** caused a Tampa attorney to wire transfer $75,999.63 to Schein for the purchase and delivery of the prescription drug shipment which was to be shipped to a Miami freight forwarding company.

22.     In or around December 1999, **MARK LIDEN** authorized the Miami freight forwarding company to release the prescription drug shipment to a representative of the domestic pharmaceutical wholesaler who agreed to purchase the drug shipment for $77,084.04.

**Order No. 2 – Peru**

23.     On or about December 25, 1999, **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** placed an order with Schein for a shipment of various prescription drugs, including Verapamil and Orphenadrine Citrate, priced at $314,090.17.

24.     In or around December 1999, **MARK LIDEN** entered into an agreement with a domestic pharmaceutical wholesaler to sell the prescription drug shipment that **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** ordered from Schein on or about December 25, 1999.

25.     On or about December 30, 1999, **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** and **MARK LIDEN** caused a Tampa attorney to wire transfer $314,090.17 to Schein for the

8

purchase of the prescription drug shipment which was to be shipped to a Miami freight forwarding company.

26.    In or around January 2000, **MARK LIDEN** authorized the Miami freight forwarding company to release the prescription drug shipment to a representative of the domestic pharmaceutical wholesaler who agreed to purchase the drugs for $386.099.08.

### Order No. 3 – Peru

27.    On or about January 7, 2000, **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** placed an order with Schein for a shipment of various prescription drugs, including Verapamil and Orphenadrine Citrate, priced at $127,856.66.

28.    In or around January 2000, defendant **MARK LIDEN** entered into an agreement with a domestic pharmaceutical wholesaler to sell the shipment of prescription drugs that **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** ordered from Schein on or about January 7, 2000.

29.    On or about January 14, 2000, **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** and **MARK LIDEN** caused a Tampa attorney to wire transfer $127,856.66 to Schein for the purchase of the prescription drug shipment which was to be shipped to a Miami freight forwarding company.

30.    In or around January 2000, **MARK LIDEN** authorized the Miami freight forwarding company to release the prescription drug shipment to a representative of the domestic pharmaceutical wholesaler who agreed to purchase the drugs for $166,233.94.

### Order No. 4 – Peru

31.    On or about January 18, 2000, **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** placed an order with Schein for a shipment of various prescription drugs, including Verapamil and Orphenadrine Citrate, priced at $212,092.87.

9

32.    In or around January 2000, **MARK LIDEN** entered into an agreement with a domestic pharmaceutical wholesaler to sell the prescription drug shipment that **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** ordered from Schein on or about January 18, 2000.

33.    On or about January 18, 2000, **CHARLES WILLIAMS, a/k/a "Rocha Nefwani,"** and **MARK LIDEN** caused a Tampa attorney to wire transfer $212,092.87 to Schein for the purchase of the prescription drug shipment.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-8

### Wire Fraud
### (18 U.S.C. §§ 1343 and 2)

1.    The allegations of paragraphs 1 through 8 of the General Allegations Section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    From in or around October 1999, and continuing through in or around June 2000, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**CHARLES WILLIAMS,**
**a/k/a "Rocha Nefwani,"**
**MARK LIDEN,**
**WILLIAM WALKER,**
**a/k/a "Per O. Loyning,"**
**and**
**SHELDON KRESLER,**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations and promises were false and fraudulent when made.

10

## PURPOSE OF THE SCHEME AND ARTIFICE

3.     It was the purpose of the scheme and artifice for the defendants, through ACR, to unjustly enrich themselves by defrauding Schein out of hundreds of thousands of dollars through the purchase of prescription drugs at steeply discounted prices based on the materially false representation that the drugs would be used for humanitarian relief overseas when, in truth and in fact, the defendants intended to sell the prescription drugs in the domestic market for a profit.

4.     Paragraphs 4 through 11 of the Manner and Means Section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## USE OF THE WIRES

5.     On or about the dates listed below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**CHARLES WILLIAMS,**
a/k/a "Rocha Nefwani,"
**MARK LIDEN,**
**WILLIAM WALKER,**
a/k/a "Per O. Loyning,"
**and**
**SHELDON KRESLER,**

for the purpose of executing the above-described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, and signals, as described in each count below:

11

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|-------|--------------|-----------------------------------|
| 2 | November 16, 1999 | Wire transfer totaling $8,800 from Terminello & Terminello, P.A.'s Commercial Bank of Florida account in Miami, Florida, to Schein's Mellon Bank account in Pittsburgh, Pennsylvania, as pre-payment of prescription drugs that ACR agreed to purchase from Schein. |
| 3 | November 23, 1999 | Wire transfer totaling $123,200 from Terminello & Terminello, P.A.'s Commercial Bank of Florida account in Miami, Florida, to Schein's Mellon Bank account in Pittsburgh, Pennsylvania, as pre-payment of prescription drugs that ACR agreed to purchase from Schein. |
| 4 | December 7, 1999 | Wire transfer totaling $414,656 from Terminello & Terminello, P.A.'s Commercial Bank of Florida account in Miami, Florida, to Schein's Mellon Bank account in Pittsburgh, Pennsylvania, as pre-payment of prescription drugs that ACR agreed to purchase from Schein. |
| 5 | December 21, 1999 | Wire transfer totaling $830,167.80 from Terminello & Terminello, P.A.'s Commercial Bank of Florida account in Miami, Florida, to Schein's Mellon Bank account in Pittsburgh, Pennsylvania, as pre-payment of prescription drugs that ACR agreed to purchase from Schein. |
| 6 | January 5, 2000 | Wire transfer totaling $312,126.20 from Terminello & Terminello, P.A.'s Commercial Bank of Florida account in Miami, Florida, to Schein's Mellon Bank account in Pittsburgh, Pennsylvania, as pre-payment of prescription drugs that ACR agreed to purchase from Schein. |
| 7 | January 13, 2000 | Wire transfer totaling $214,720 from Terminello & Terminello, P.A.'s Commercial Bank of Florida account in Miami, Florida, to Schein's Mellon Bank account in Pittsburgh, Pennsylvania, as pre-payment of prescription drugs that ACR agreed to purchase from Schein. |
| 8 | January 20, 2000 | Wire transfer totaling $117,081.12 from Terminello & Terminello, P.A.'s Commercial Bank of Florida account in Miami, Florida, to Schein's Mellon Bank account in Pittsburgh, Pennsylvania, as pre-payment of prescription drugs that ACR agreed to purchase from Schein. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

12

## COUNT 9

### Prescription Drug Diversion
### (21 U.S.C. §§ 331(t), 333(a)(2) and 353(c)(3)(A)(i) and (ii)(II)
### and 18 U.S.C. § 2)

1.      Paragraphs 1 through 8 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about December 9, 1999, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**CHARLES WILLIAMS,**
**a/k/a "Rocha Nefwani,"**
**MARK LIDEN,**
**WILLIAM WALKER,**
**a/k/a "Per O. Loyning,"**
**and**
**SHELDON KRESLER,**

with the intent to defraud and mislead, did sell and offer to sell a quantity of Infed, a prescription drug which is limited by approved application under Title 21, United States Code, Section 505, which drug was previously supplied at a reduced price to ACR, a charitable organization pursuant to Title 26, United States Code, Section 501(c)(3); in violation of Title 21, United States Code, Sections 331(t), 333(a)(2), and 353(c)(3)(A)(i) and (ii)(II), and Title 18, United States Code, Section 2.

## COUNT 10

### Money Laundering Conspiracy
### (18 U.S.C. § 1956(h))

1.      Paragraphs 1 through 8 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around November 1999, and continuing through in or around January 2000, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

13

**CHARLES WILLIAMS,**
**a/k/a "Rocha Nefwani,"**
**MARK LIDEN,**
**WILLIAM WALKER,**
**a/k/a "Per O. Loyning,"**
**and**
**SHELDON KRESLER,**

did knowingly combine, conspire, confederate and agree with each other to commit certain offenses under Title 18, United States Code, Section 1956, that is, to conduct and attempt to conduct financial transactions affecting interstate commerce, which financial transactions involved the proceeds of specified unlawful activity, that is, wire fraud, as alleged in Counts 2 through 8 of this Indictment, in violation of Title 18, United States Code, Section 1343, knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 11 - 23

### Money Laundering
### (18 U.S.C. §§ 1956(a)(1)(B)(i) and 2)

1.    Paragraphs 1 through 8 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates specified below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**CHARLES WILLIAMS,**
**a/k/a "Rocha Nefwani,"**
**MARK LIDEN,**
**WILLIAM WALKER,**
**a/k/a "Per O. Loyning,"**
**and**
**SHELDON KRESLER,**

14

did knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, as described in each count below, involving the proceeds of specified unlawful activity, that is, wire fraud, as alleged in Counts 2 through 8 of this Indictment, in violation of Title 18, United States Code, Section 1343, knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented proceeds of some form of unlawful activity:

| COUNT | APPROX. DATE | DESCRIPTION OF FINANCIAL TRANSACTION |
|-------|--------------|--------------------------------------|
| 11 | November 22, 1999 | Check #1550 in the amount of $15,000 drawn on Aegis Management Corp.'s account at Union Planters Bank and payable to Crystal Coast, Inc. |
| 12 | December 2, 1999 | Wire transfer in the amount of $11,250 from Terminello & Terminello, P.A.'s trust account at Commercial Bank of Florida to Marisa Trading's account at NationsBank. |
| 13 | December 2, 1999 | Wire transfer in the amount of $7,875 from Marisa Trading's account at NationsBank to Shirley Price's account at Bank of America. |
| 14 | December 10, 1999 | Wire transfer in the amount of $55,294 from Terminello & Terminello, P.A.'s trust account at Commercial Bank of Florida to Marisa Trading's account at NationsBank. |
| 15 | December 23, 1999 | Wire transfer in the amount of $83,602 from Terminello & Terminello, P.A.'s trust account at Commercial Bank of Florida to Marisa Trading's account at NationsBank. |
| 16 | January 4, 2000 | Wire transfer in the amount of $30,000 from Terminello & Terminello, P.A.'s trust account at Commercial Bank of Florida to Dearman & Gerson's account at Republic Security Bank. |
| 17 | January 11, 2000 | Wire transfer in the amount of $23,413 from Terminello & Terminello, P.A.'s trust account at Commercial Bank of Florida to Arsenault & Reardon, P.A.'s account at First Union National Bank of Florida. |
| 18 | January 13, 2000 | Wire transfer in the amount of $15,000 from Terminello & Terminello, P.A.'s trust account at Commercial Bank of Florida to Arsenault & Reardon, P.A.'s account at First Union National Bank of Florida. |

| 19 | January 20, 2000 | Wire transfer in the amount of $205,000 from Terminello & Terminello, P.A.'s trust account at Commercial Bank of Florida to Dearman & Gerson's account at Republic Security Bank. |
| 20 | January 20, 2000 | Wire transfer in the amount of $200,000 from Terminello & Terminello, P.A.'s trust account at Commercial Bank of Florida to JAP International, Ltd.'s account at Barclay's Bank, PLC. |
| 21 | January 13, 2000 | Wire transfer in the amount of $20,000 from Arsenault & Reardon, P.A.'s account at First Union National Bank of Florida to Georgina Muandumba's account at Bank of America. |
| 22 | January 14, 2000 | Wire transfer in the amount of $12,964.69 from Arsenault & Reardon, P.A.'s account at First Union National Bank of Florida to Marisa Trading's account at NationsBank. |
| 23 | January 21, 2000 | Wire transfer in the amount of $12,519.58 from Arsenault & Reardon, P.A.'s account at First Union National Bank of Florida to Johnny Bowen's Bank of America account. |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## <u>FORFEITURE ALLEGATION</u>

### (18 U.S.C. § 982)

1. The allegations of Counts 1 through 23 of this Indictment are re-alleged and incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property, pursuant to the provisions of Title 18, United States Code, Section 982(a)(1) and the procedures set forth in Title 21, United States Code, Section 853 and Rule 32.2, Federal Rules of Criminal Procedure, as incorporated pursuant to Title 18, United States Code, Sections 982(b).

2. Pursuant to Title 18, United States Code, Section 982(a)(1) and Title 21, United States Code, Section 853, upon the conviction of the defendants of any violation of Title 18, United States Code, Section 1956, as alleged in Counts 10 through 23 of this Indictment, the United States is entitled to the forfeiture of, and the defendants,

16

**CHARLES WILLIAMS,**
**a/k/a "Rocha Nefwani,"**
**MARK LIDEN,**
**WILLIAM WALKER,**
**a/k/a "Per O. Loyning,"**
**and**
**SHELDON KRESLER,**

shall forfeit to the United States, any property, real or personal, involved in any such offenses or any property traceable to such property.

3.   With respect to the forfeitures described in Paragraphs 1 and 2 of this Forfeiture Allegation, the property subject to forfeiture to the United States includes, but is not limited to, the sum of $1,446,789 in United States currency, and all interest and proceeds traceable thereto.

4.   If any of the property described above, as a result of any act or omission by the defendants,

(A)   cannot be located upon the exercise of due diligence;

(B)   has been transferred, or sold to, or deposited with a third party;

(C)   has been placed beyond the jurisdiction of the Court;

(D)   has been substantially diminished in value; or

(E)   has been commingled with other property which cannot be divided without difficulty,

the defendants shall forfeit to the United States any other property of the defendants, up to the value

17

of the above forfeitable property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b).

All pursuant to Title 18, United States Code, Sections 982(a)(1), and 982(b), and Title 21, United States Code, Section 853.

A TRUE BILL

FOREPERSON

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

RICARDO A. DEL TORO
ASSISTANT UNITED STATES ATTORNEY

18

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA**

04 - 20211 CR-JORDAN MAGISTRATE JUDGE
BROWN

CASE NO.

vs.

**CHARLES WILLIAMS,**
a/k/a "Rocha Nefwani," et al.,
                    **Defendants.**
_____/

**CERTIFICATE OF TRIAL ATTORNEY***

Date _____ Time _____

**Superseding Case Information:**

**Court Division:** (Select One)

| | | |
|---|---|---|
| X | Miami | ____ Key West |
| ____ | FTL | ____ WPB ____ FTP |

New Defendant(s)    Yes _____   No _____
Number of New Defendants
Total number of counts    _____

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:   (Yes or No)   No
    List language and/or dialect _____

4.  This case will take _____ days for the parties to try.

FILED by _____ D.C.
MAG. SEC.

APR - 8 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

5.  Please check appropriate category and type of offense listed below:
    (Check only one)                          (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | | Petty | _____ |
| II | 6 to 10 days | X | | Minor | _____ |
| III | 11 to 20 days | _____ | | Misdem. | _____ |
| IV | 21 to 60 days | _____ | | Felony | X |
| V | 61 days and over | _____ | | | |

6.  Has this case been previously filed in this District Court?  (Yes or No)   X
    If yes:
    Judge: _____   Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?   (Yes or No)   X
    If yes:
    Magistrate Case No. _____
    Related Miscellaneous numbers: _____
    Defendant(s) in federal custody as of _____
    Defendant(s) in state custody as of _____
    Rule 20 from the _____   District of _____

    Is this a potential death penalty case? (Yes or No)   No

7.  Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003?   X   Yes    _____ No

8.  Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999?   _____ Yes   X   No
    If yes, was it pending in the Central Region?    _____ Yes    _____ No

9.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   _____ Yes   X   No

10. Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003?    _____ Yes   X   No

_____
**RICARDO A. DEL TORO**
**ASSISTANT UNITED STATES ATTORNEY**
**Florida Bar No. 0957585**

*Penalty Sheet(s) attached

REV 1/14/04

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** CHARLES WILLIAMS, a/k/a "Rocha Nefwani"

**Case No:** 04 - 20 __ 1 cr-JORDAN  MAGISTRATE JUDGE BROWN

**Count #:** 1

Conspiracy to commit wire fraud and prescription drug diversion

18 U.S.C. § 371

**\* Max.Penalty:**  5 years' imprisonment

**Counts #: 2-8**

Wire fraud

18 U.S.C. § 1343

**\*Max. Penalty:**  5 years' imprisonment

**Count #: 9**

Prescription drug diversion

21 U.S.C. §§ 353(c)(3)(A)(i) and (ii)(II), 331(t) and 333(a)(2)

**\*Max. Penalty:**  3 years' imprisonment

**Count #: 10**

Money laundering conspiracy

18 U.S.C. § 1956(h)

**\*Max. Penalty:**  20 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Counts  #: 11-23

 Money laundering

 18 U.S.C. § 1956(a)(1)(B)(i)

**\* Max.Penalty**:        20 years' imprisonment



04-20    1   CR-JORDAN   MAGISTRATE JUDGE
BROWN

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

2

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: **MARK LIDEN**

MAGISTRATE JUDGE
BROWN

Case No: 04 - 20211 CR-JORDAN

Count #: 1

Conspiracy to commit wire fraud and prescription drug diversion

18 U.S.C. § 371

**\* Max.Penalty:**    5 years' imprisonment

Counts #: 2-8

Wire fraud

18 U.S.C. § 1343

FILED        D.C.
MAG.

APR - 8 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**\*Max. Penalty:**    5 years' imprisonment

Count #: 9

Prescription drug diversion

21 U.S.C. §§ 353(c)(3)(A)(i) and (ii)(II), 331(t) and 333(a)(2)

**\*Max. Penalty:**    3 years' imprisonment

Count #: 10

Money laundering conspiracy

18 U.S.C. § 1956(h)

**\*Max. Penalty:**    20 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Counts #: 11-23

 Money laundering

 18 U.S.C. § 1956(a)(1)(B)(i)

* **Max.Penalty**:        20 years' imprisonment



---

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** WILLIAM WALKER, a/k/a "Per O. Loyning"

**Case No:**

**Count #: 1**   04 - 20211   CR-JORDAN   MAGISTRATE JUDGE BROWN

  Conspiracy to commit wire fraud and prescription drug diversion

  18 U.S.C. § 371

**\* Max.Penalty:**      5 years' imprisonment

**Counts #: 2-8**
  Wire fraud

  18 U.S.C. § 1343

**\*Max. Penalty:**      5 years' imprisonment

**Count #: 9**

  Prescription drug diversion

  21 U.S.C. §§ 353(c)(3)(A)(i) and (ii)(II), 331(t) and 333(a)(2)

**\*Max. Penalty:**      3 years' imprisonment

**Count #: 10**

  Money laundering conspiracy

  18 U.S.C. § 1956(h)

**\*Max. Penalty:**      20 years' imprisonment


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Counts #: 11-23

 Money laundering

 18 U.S.C. § 1956(a)(1)(B)(i)

**\* Max.Penalty**:       20 years' imprisonment



**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** **SHELDON KRESLER**

**Case No:**  04 - 20211 CR-JORDAN  MAGISTRATE JUDGE BROWN

**Count #: 1**

Conspiracy to commit wire fraud and prescription drug diversion

18 U.S.C. § 371

**\* Max.Penalty:**      5 years' imprisonment

**Counts #: 2-8**

Wire fraud

18 U.S.C. § 1343

FILED by _____ D.C.
MAG. SEC.
APR - 8 2004
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**\*Max. Penalty:**      5 years' imprisonment

**Count #: 9**

Prescription drug diversion

21 U.S.C. §§ 353(c)(3)(A)(i) and (ii)(II), 331(t) and 333(a)(2)

**\*Max. Penalty:**      3 years' imprisonment

**Count #: 10**

Money laundering conspiracy

18 U.S.C. § 1956(h)

**\*Max. Penalty:**      20 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Counts #: 11-23

Money laundering

18 U.S.C. § 1956(a)(1)(B)(i)

**\* Max.Penalty**:        20 years' imprisonment



**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

2

FORM DBD-34
JUN. 85

UNITED STATES DISTRICT COURT

Southern _____ District of _____ Florida _____

_____ Criminal _____ Division

THE UNITED STATES OF AMERICA

vs.

CHARLES WILLIAMS, a/k/a "Rocha Nefwani," et al.,

Defendants.

No. 04 - 20211 CR

MAGISTRATE JUDGE
BROWN

**INDICTMENT**

In violation of:

18 U.S.C. §371
18 U.S.C. §1343
18 U.S.C. §1956(a)(1)(B)(i)
18 U.S.C. §1956(h)
21 U.S.C. §§ 853c(3)(A)(i) and (iii)(II)
21 U.S.C. §331(t)
18 U.S.C. §2
21 U.S.C. §333(a)(2)
18 U.S.C. §982

A true bill.

(FGJ 03-02) _____ Emma Morale _____
Foreman

Filed in open court this
8th
_____ of _____ April _____ 2004

_____ Elizabeth Rodriguez _____
Deputy Clerk

Bail $ _____