UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-20211-CR-JORDAN

UNITED STATES OF AMERICA

vs.

WILLIAM WALKER,
   a/k/a "Per Loyning,"

   Defendant.

_____/

**NIGHT BOX**
**FILED**

APR 14 2005

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS AND MOTION

The United States, by and through the undersigned Assistant United States Attorney, hereby files this response to defendant William Walker's response and objections to the pre-sentence investigation (PSI) report, as well as his motion for downward departure, pursuant to the advisory Sentencing Guidelines Section 5K2.0.

### RESPONSE

### I.   The Defendant's Criminal History Calculation Is Correct

The defendant argues that his May 8, 2003 arrest and eventual conviction is related to the instant offense for which he is to be sentenced, and therefore, his criminal history should not include any points for that conviction. (Def.'s Obj. at 1; *see* PSI ¶ 98 (applying two points for prior conviction).) Although these two crimes both involve pharmaceutical drugs, these crimes are not legally related, and thus the Court should overruled this objection.[1]

The U.S. Sentencing Guidelines for 1998, which is the applicable guidelines manual, states

---

[1] As a threshold matter, assuming the convictions are not related, a defendant who commits two crimes and is sentenced in state court for the second crime and later prosecuted in federal court for the first crime, as is the case present here, the state court sentence is properly counted as part of the criminal history. *United States v. Walker*, 912 F.2d 1365 (11th Cir. 1990)

that if a prior sentence is not separated by an intervening arrest it is "considered related if they resulted from offenses that(A) occurred on the same occasion, (B) were part of a single common scheme or plan; or (C) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2 at 298. Using these elements as the touchstone of a "relatedness" analysis, the defendant's objection cannot pass muster.

The crime for which the defendant was charged by the State of Florida and was later sentenced concerned an April 2003 scheme involving the purchase of Lupron and Zoladex from a medical doctor, in which those prescription drugs were then subsequently sold to a drug wholesaler in Nevada called Dutchess Business Services. (PSI ¶ 98.) Unlike the State of Florida's case against the defendant reflected in Paragraph 98, the conduct for which the defendant prosecuted in the instant case involved a fraudulent scheme, between late 1999 and mid 2000, to acquire certain pharmaceutical drugs directly from a manufacturer, Schein Pharmaceutical, Inc. ("Schein"), which is now known as Watson Pharma, Inc., at a steep discount by falsely representing that the drugs would be used for humanitarian relief overseas and then laundering the profits from that activity. (*See* PSI ¶¶ 8-66.) These two separate criminal activities are different in almost all respects, even if they both involved prescription drugs and both involved the defendant.

Accordingly, this case is entirely distinguishable from the benchmark case of *United States v.Query*, 928 F.2d 383, 386 (11th Cir. 1991), in which the Eleventh Circuit found that a prior state conviction was related to other federal charges and thus did not count the defendant's prior sentence in his criminal history calculation. The *Query* case involved a drug case involving methamphetamine, where the defendant was charged in two separate federal indictments returned on the same day for conduct that occurred within days of each other involving the same type of drug

2

made at the same location. *Id*. at 385-86. The defendant was also charged in a state case that

involved the same type of drug manufactured at the same location within days of the federal charges.

*Id*. The only differences were that: (1) in the federal case the drugs were found on the defendant,

whereas in the state case the drugs were found in the defendant's car; and (2) in the federal case the

drugs were sent by the defendant, whereas in the state case, the drugs were moved at the defendant's

direction. *Id*. Here, such closely connected conduct simply does not exist.

As an initial matter, these two crimes are *temporally separate*. The crime reported in

Paragraph 98 occurred on April 29, 2003. In the present case, the defendant pleaded guilty to Count

1 and Count 10, and the dates of that conduct is between October of 1999 to June of 2000.

Moreover, these two different crimes involved *different schemes*: one was to obtain prescription

drugs from medical doctors and sell them on a secondary market, whereas the instant case involves

falsely claiming to a drug manufacturer to be a humanitarian organization that intended to distribute

the drugs overseas as part of a relief effort and laundering the proceeds. (*Compare* ¶ 98 *with* ¶¶ 8-

66.) As such, the two scheme involve *different victims* and *different co-conspirators*. Importantly,

that these two different cases arise from different schemes is also reflected in the substantially

different criminal charges. The state charges principally involved conspiring to possess controlled

substances, where as the federal charges involve, besides drug diversion, wire fraud (defrauding

Schein) as well as money laundering. Further, the two different schemes involved *different*

*pharmaceutical products*. The prior conviction involved the illegal purchase and resale of Lupron

and Zoladez, whereas the instant case involved Infed, Carisprodol, Verapamil, and Orphenadrine

Citrate, among others. (*Compare* ¶ 98 at 24 *with* ¶¶ 27, 42.) Finally, the societal significance, and

concomitant need for specific deterrence, of the different schemes merits consideration. The instant

case involves preying upon a company's willingness to sell certain pharmaceutical products at a steep discount to humanitarian agencies, only to have those products sold on a secondary market, as opposed to being delivered to needy people in Angola and Peru. For these reasons, the Court should overrule the defendant's objections.

## II.   The Defendant Should Be Held Accountable to Pay Restitution

The defendant argues that the Probation Office's analysis is flawed because it presupposes that a ready buyer existed for Schein's products. The defendant also concludes that Schein accrued significant tax advantages, which means "Schein suffered zero damages." (Def.'s Obj. at 2-3.) Although the Court should slightly reduce the amount of restitution owed, it should still be ordered in this case.[2]

As reflected in the PSI, the defendant made misrepresentations to Schein that led Schein to sell the defendant and others pharmaceutical products at a steep discount. The reasonable value of those products was $6,301,016, according to Watson Pharma, which is the current name of Schein. Nevertheless, Schein sold those products to the defendant for $2,353,165. Since those products could have been sold for $3,947,851 more than they were, that amount reflects the amount of loss to Schein/Watson Pharma. This analysis is consistent with Eleventh Circuit precedent, which directs courts inquiring about restitution to look to the appropriate market in determining the loss to the victim. *United States v. Machado*, 333 F.3d 1225, 1227 (11th Cir. 2003) (rejecting universal retail

---

[2] The defendant also notes that he has no ability to pay an order of restitution. Since the Mandatory Restitution Act of 1996, reflected in Title 18, United States Code, Section 3664(f)(1)(A), the defendant's ability to pay is no longer a factor to be considered in setting the amount of restitution. A district court does not even have the discretion to consider the defendant's ability to pay in setting a restitution amount. *United States v. Futrell*, 209 F.3d 1286 (11th Cir. 2000).

4

market value in favor of "measuring loss within the factual circumstances presented"). Here, as Schein/Watson Pharma makes clear, the loss amount is derived from what Schein "would have received if it had sold the product[s] to its regular customers in the ordinary course of business," as opposed to the retail level. (Jan. 21, 2005 Decl. of Victim Loss at 1.) Accordingly, this loss amount was appropriately calculated.

That loss amount, however, should be reduced by $117,081.12, which is the amount of money that Schein had already been transferred just as the fraud was discovered. Schein kept possession of this amount of money, without the transferring of additional merchandise, and thus should be offset against the loss amount. The new loss amount comes to $3,830,769.88.

**III.    The Defendant's Post-Arrest Conduct Does Not Fall Outside the Heartland of Cases**

The defendant has moved this Court for a reduction under Section 5K2.0 of the advisory Sentencing Guidelines, pursuant to Title 18, United States Code, Section 3553(b), for his "extraordinary" post plea efforts to cooperate, which takes his case outside the heartland of cases contemplated by the Sentencing Guidelines. (Def.'s Mot. at 1-2.) This motion should be rejected.

While the defendant did agree to plead guilty in a timely fashion, this aspect of his conduct has been adequately and reasonably addressed by the provisions of Section 3E1.1(a) and (b), which provide for a reduction in his offense level for timely acceptance of personal responsibility. Although the application of Section 3E1.1 does not preclude this Court from considering a departure under Section 5K2.0, such an application here, as a matter of discretion, seems inappropriate. Nothing in the defendant's post-arrest conduct differentiates him in any meaningful way from hundreds of defendants who timely change their plea to guilty in order to gain certain sentencing benefits. Indeed, even one of the cases cited by the defendant suggests that the defendant's conduct

5

here does not merit such extraordinary consideration. *See United States v. Liberman*, 971 F.2d 989 (3rd Cir. 1992). In *Lieberman*, the defendant stopped his conduct before being arrested, paid even more restitution than was necessary, and voluntary went to the federal authorities to self-report his own conduct. *Id*. at 991, 996.

It is also true that the defendant agreed to cooperate with the United States in locating and prosecuting other persons who conspired with the defendant to defraud Schein. This cooperation is ongoing in nature as two other co-conspirators remain at large, and with regard to one of those fugitives, the government is pursuing the possibility of extradition through the Department of Justice's Office of International Affairs. Accordingly, the government is not, at this time, moving for a reduction of the defendant's sentence, though it may become appropriate at a later date through the provisions of Rule 35 of the Federal Rules of Criminal Procedure. As such, this aspect of the defendant's post-arrest conduct is being adequately and reasonably addressed.

To suggest that the defendant's cooperation is deserving of special, extraordinary consideration, however, would be inappropriate. *First*, the defendant's cooperation with the government began *only after he was caught* and charged in an indictment facing a very lengthy prison term following a long-term investigation of his fraudulent activities. *Second*, that the defendant has gone to the lengths of hiring a private investigator to try to locate co-defendants – because he knows that this may help him reduce his sentence – does not merit special accolades and treatment. *Third*, there does not appear to be any other extraordinary selfless ameliorative conduct on the part of the defendant to make his victim whole or undue the harm he has caused. Accordingly, the Court, in its discretion, should deny this motion.

6

## CONCLUSION

WHEREFORE, the United States requests that the Court overrule the defendant's objections

and deny his motion for a downward departure.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By:

CHARLES E. DUROSS
ASSISTANT U.S. ATTORNEY
Court No. A5500618
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel:    (305) 961-9358
Fax:    (305) 536-7213
Email: charles.e.duross@usdoj.gov


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered by

facsimile and by hand, this 15th day of April, 2005 to:

Jay L. Levine, Esq.
3191 Coral Way, Suite 1010
Miami, FL 33145

Assistant United States Attorney

7